**HYLAND LEVIN SHAPIRO LLP**
By: David R. Dahan, Esquire
NJ Attorney ID #027391997
Opeyemi D. Akinde, Esquire
NJ Attorney ID #335432020
6000 Sagemore Drive, Suite 6301
Marlton, NJ 08053-3900
Phone: 856.355.2900
Fax: 856.355.2901
Attorneys for Plaintiff, Centennial Mill By Del Webb Community Association, Inc.

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CENTENNIAL MILL BY DEL WEBB COMMUNITY ASSOCIATION, INC., <br><br> Plaintiff, <br><br> v. <br><br> CORNERSTONE BUILDING BRANDS, INC., PLY GEM HOLDINGS, INC., PLY GEM INDUSTRIES, INC., MASTIC HOME EXTERIORS, INC., and MW MANUFACTURERS, INC., successor to PATRIOT VINYL CORPORATION d/b/a PATRIOT VINYL WINDOWS AND DOORS, <br><br> Defendants. | CIVIL ACTION NO. <br><br> **COMPLAINT AND JURY DEMAND** |

**PARTIES**

1. Plaintiff, Centennial Mill by Del Webb Community Association, Inc. (the "Association" or "Plaintiff") is a New Jersey non-profit corporation, responsible to provide for the administration and operation of the Association and the common property of the Centennial Mill by Del Webb, A Planned Community (the "Community"), physically located in Voorhees,

{H0105232.5}

County of Camden, New Jersey, with an address c/o FirstService Residential MidAtlantic, LLC, 35 Alyce Lane, County of Camden, New Jersey 08043.

2. Pursuant to N.J.S.A. 45:22A-43 and N.J.S.A. 45:22A-44, the Association is obligated to manage the common elements and facilities of the Community and may assert tort claims concerning those common elements and facilities.

3. The Association, by and through its Board of Trustees, brings this action under the authority set forth in N.J.S.A. 45:22A-21, *et seq.*, and under the authority set forth in the Declaration of Covenants and Restrictions, Bylaws, and other governing documents of the Association, which instruments are of record in the County of Camden, State of New Jersey.

4. Defendant, Cornerstone Building Brands, Inc. ("Cornerstone"), is a Delaware corporation with a principal place of business at 5020 Weston Parkway, Suite 400, Cary, North Carolina 27513, with a registered agent of Cogency Global Inc., 850 New Burton Road, Suite 201, Dover, Delaware 19904.

5. Defendant, Ply Gem Holdings, Inc. ("PG Holdings"), is a Delaware corporation with a principal place of business at 5020 Weston Parkway, Suite 400, Cary, North Carolina 27513, with a registered agent of Corporation Service Company, 251 Little Falls Drive, Wilmington, Delaware 19808.

6. Defendant, Ply Gem Industries, Inc. ("PG Subsidiary"), is a Delaware corporation with a principal place of business at 5020 Weston Parkway, Suite 400, Cary, North Carolina 27513, with a registered agent of Corporation Service Company, 251 Little Falls Drive, Wilmington, Delaware 19808.

7. Upon information and belief, PG Subsidiary is a wholly-owned subsidiary of PG Holdings.

8. Upon information and belief, PG Holdings and PG Subsidiary (collectively, "Ply Gem") have common Members of their Board of Directors.

9. Upon information and belief, Ply Gem underwent a merger in 2018 and has been operating as Cornerstone Building Brands, Inc. since 2019.

10. Defendant, Mastic Home Exteriors, Inc. (hereinafter "Mastic") is an Ohio corporation with a principal place of business at 5020 Weston Parkway, Suite 400, Cary, North Carolina 27513.

11. Defendant, MW Manufacturers, Inc., as successor by merger to Patriot Vinyl Corporation d/b/a Patriot Vinyl Windows and Doors (hereinafter "MW" and together with Mastic, Ply Gem, and Cornerstone, the "Defendants") is a Delaware corporation with a registered agent of Corporation Service Company, 251 Little Falls Drive, Wilmington, Delaware 19808.

## STATEMENT OF JURISDICTION

12. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332 because complete diversity of citizenship exists between the Plaintiffs and all Defendants, and because the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

13. In addition, pursuant to the Second Action (as hereinafter defined) and the resulting 2019 Settlement Agreement (as hereinafter defined), Plaintiff and Defendants consented to this Court retaining jurisdiction to enforce the terms of the 2019 Settlement Agreement.

## BACKGROUND

14. On or about August 19, 2011, Jerry and Iris Schechtman commenced an action against Plaintiff, and Plaintiff, in turn, filed, among other things, a Third-Party Complaint against Defendants in the case captioned <u>Jerry and Iris Schectman v. Centennial Mill Assoc. and</u>

<u>Wentworth Property Management Co. and Centennial Mill by Del Webb Community Association, Inc. and Wentworth Property Management Corp. v. Pulte Homes of NJ, Limited Partnership t/a Del Webb, et al.</u>, Superior Court of New Jersey, Law Division, Camden County, Docket No. CAM-L-4609-11 (the "First Action").

15. The First Action primarily related to damage on the vinyl siding covering certain homes in the Community through a phenomenon commonly known as "thermal distortion".

16. On or about March 3, 2014, Plaintiff and Defendants resolved the First Action through the execution of a certain Settlement Agreement (the "2014 Settlement Agreement") and a certain Warranty Contract pursuant to which they agreed, among other things, to have certain Work (as defined therein) performed to address and prevent the thermal distortion phenomenon at certain known locations.

17. On or about July 10, 2017, Plaintiff initiated a second action under Docket No. CAM-L-2746-17 by filing a Complaint in the Superior Court of New Jersey, Law Division, Camden County against Defendants, which was subsequently removed to the United States District Court for the District of New Jersey, Camden Vicinage, under Civil Action No. 1:17-cv-07675 on or about September 29, 2017 (the "Second Action").

18. The Complaint in the Second Action brought forth numerous counts related to breach of contract, breach of warranty, the Consumer Fraud Act under <u>N.J.S.A.</u> 56:8-1, *et seq.*, negligence, and products liability, all arising from newer instances of thermal distortion that occurred subsequent to the execution of the 2014 Settlement Agreement.

19. In or around October 2019, Plaintiff and Defendants resolved the Second Action in accordance with the terms of a certain Settlement Agreement and Mutual Release (the "2019

Settlement Agreement"). A true and correct copy of the 2019 Settlement Agreement is attached hereto as Exhibit 1, and is incorporated by reference as if fully set forth at length herein.

20. Pursuant to the 2019 Settlement Agreement, Defendants acknowledged thereto that "[t]his Agreement shall be for the benefit of and binding upon the parties and their respective successors, heirs, and assigns." As such, Cornerstone, as successor by merger to Ply Gem, is bound by the 2019 Settlement Agreement. See Exhibit 1 at ¶ 7.

21. Pursuant to the 2019 Settlement Agreement, Defendants agreed, at their sole cost and expense, to pay for and to provide all labor and materials to replace certain window units causing thermal distortion to the siding of certain homes in the Community, as well as the materials necessary to replace the impacted vinyl siding. See Exhibit 1.

22. The 2019 Settlement Agreement also included a certain Warranty Contract ("2019 Warranty Contract"). See Exhibit 1 at Exhibit A.

23. Pursuant to the 2019 Warranty Contract, Defendants agreed that "[t]he Work regarding replacement of the window Units and siding shall be completed within two (2) months of commencement of the Work …" See 2019 Warranty Contract at ¶ E.

24. Defendants promised Plaintiff that upon notice that any contractual services were not being performed in accordance with the terms of the 2019 Warranty Contract, "MW and/or Mastic, as applicable, shall promptly resolve the issue which is the subject of the notice … [within no more than] seven (7) days." See 2019 Warranty Contract at ¶ C.

25. Defendants further acknowledged and agreed that "as a material part of this Warranty Contract, and for a period of five (5) years from the effective date of the Settlement Agreement and Mutual Release dated the date hereof, it shall provide [a] warranty in connection

with all windows and siding installed at the Site for all Homes …" See 2019 Warranty Contract at ¶ J.

26. In or about February/March 2020, prior to the COVID-19 pandemic, and pursuant to the Warranty Contract, Defendants commenced the Work (as defined therein).

27. Frank Florentino from All Tech was hired by Defendants in order to facilitate Work on the affected homes within the Community.

28. Resumption of the Work was delayed for over one (1) year due to the COVID-19 pandemic.

29. On or around March 29, 2021, Defendants provided Plaintiff with notice that Frank Florentino was instructed to resume Work on the affected homes within the Community. See Exhibit 2.

30. However, Defendants did not resume Work until June 8, 2021, and did not provide Plaintiff with an explanation for the 10-week delay.

31. Based on the resumption of Work on June 8, 2021 and the 2019 Warranty Contract, Defendants were required to complete all Work by no later than August 8, 2021. See 2019 Warranty Contract at ¶ E.

32. Throughout the months of June and July 2021, Work was performed on a minimal and sporadic basis due to, among other things, defective materials provided by Defendants and unreasonable delays by Defendants.

33. Defendants have suspended Work on the project indefinitely.

34. Despite numerous requests to Defendants to once again resume Work, Defendants have refused to uphold their obligations and duties under the 2019 Settlement Agreement, 2019 Warranty Contract and common law.

35. As of the date of this filing, Defendants have not completed the Work to correct and address thermal distortion on affected homes within the Community.

36. Defendants' acts and/or omissions were actuated by actual malice or accompanied by a wanton and willful disregard of the Plaintiff who foreseeably might be harmed by those acts or omissions.

37. The 2019 Settlement Agreement included a release of claims relating to the windows and/or siding in the Community, but reserved an exemption for any claims arising from or related to (a) an alleged breach of the 2019 Settlement Agreement or the 2019 Warranty Contract and (b) the rights or obligations under the 2019 Settlement Agreement or the 2019 Warranty Contract. See Exhibit 1 at ¶ 4.

38. In the 2019 Settlement Agreement, Defendants agreed that, in the event of their breach, (a) the Association shall have a right to enforce the Settlement Agreement by specific performance, and (b) "the Association shall be made whole so that it is in the same position it would have been in but for such breach and shall be entitled to recover all damages and reasonable attorney's fees, costs and expenses from Mastic and/or MW in connection with enforcing the terms of this Agreement." See Exhibit 1 at ¶ 15.

## COUNT I

## BREACH OF CONTRACT

39. The Association incorporates all allegations in the prior paragraphs as if fully set forth at length in this paragraph.

40. Defendants entered into the 2019 Settlement Agreement and Warranty Contract with the Association pursuant to which, among other things, they agreed to be "individually, jointly and severally liable" for all obligations under the 2019 Settlement Agreement and the Warranty Contract. See Exhibit 1 at ¶ 1.

41. Pursuant to the Warranty Contract, Defendants represented and warranted, in pertinent part: "[t]he Work regarding replacement of the window Units and siding shall be completed within two (2) months of commencement of the Work …". <u>See</u> 2019 Warranty Contract at ¶ E.

42. Defendants have express obligations and duties under the 2019 Settlement Agreement and 2019 Warranty Contract to, among other obligations, complete the agreed upon Work within two (2) months of its commencement and supply suitable, non-defective materials to perform the Work.

43. Defendants breached the 2019 Settlement Agreement and 2019 Warranty Contract by failing to complete the Work within two (2) months of commencement.

44. Defendants further breached the 2019 Settlement Agreement and 2019 Warranty Contract by failing to supply suitable, non-defective materials to perform the Work.

45. The Association has suffered damages as a result of the breach of the 2019 Settlement Agreement and 2019 Warranty Contract, which include, but are not limited to:

    A. The unnecessary perpetuation of thermal distortion on affected homes within the Community, causing physical damage to property of the Association; and

    B. The expenditure of money in the future in order to correct, cure, repair or replace components of the affected homes in the Community that were, or will be, damaged by thermal distortion.

**WHEREFORE,** the Association demands judgment against Defendants, jointly, severally, and in the alternative, for compensatory, consequential and incidental damages, punitive damages, interest, attorney's fees, costs of suit, and such other relief as this Court may deem just and appropriate.

## COUNT II

## MUTUAL MISTAKE

46. The Association incorporates all allegations in the prior paragraphs as if fully set forth at length in this paragraph.

47. As part of the 2019 Warranty Contract, Defendants agreed that "as a material part of this Warranty Contract, and for a period of five (5) years from the effective date of the Settlement Agreement and Mutual Release dated the date hereof, it shall provide [a] warranty in connection with all windows and siding installed at the Site for all Homes …". See 2019 Warranty Contract at ¶ J ("Warranty Provision").

48. The intent of the parties to the 2019 Settlement Agreement, and the expectation of the parties, was that the Work would promptly commence after the 2019 Settlement Agreement was fully executed in or about November 2019 and be completed within two (2) months after commencement such that Plaintiff would receive the maximum time period of the 5-year Warranty Provision and no less than a 4 and ½ year warranty period.

49. The Warranty Provision has a material effect on the agreed exchange of performance.

50. Plaintiff and Defendants shared the same erroneous assumption as to the terms of the Warranty Contract in that the Work would promptly commence after the 2019 Settlement Agreement was fully executed in or about November 2019 and be completed within two (2) months after commencement such that Plaintiff would receive the maximum time period of the 5-year Warranty Provision and no less than a 4 and ½ year warranty period.

51. Such mistaken assumption is material and was not induced by negligence.

52. As a result, the Warranty Provision as written fails to express the parties' intent and warrants reformation to correct the mistake.

**WHEREFORE,** the Association demands reformation of the Warranty Provision to correct the commencement date of Defendants' warranty to instead begin upon completion of the Work, as well as judgment against Defendants, jointly, severally, and in the alternative, for compensatory, consequential and incidental damages, punitive damages, interest, attorney's fees, costs of suit, and such other relief as this Court may deem just and appropriate.

## COUNT III

### UNILATERAL MISTAKE (IN THE ALTERNATIVE)

53. The Association incorporates all allegations in the prior paragraphs as if fully set forth at length in this paragraph.

54. As part of the 2019 Warranty Contract, Defendants agreed that "as a material part of this Warranty Contract, and for a period of five (5) years from the effective date of the Settlement Agreement and Mutual Release dated the date hereof, it shall provide [a] warranty in connection with all windows and siding installed at the Site for all Homes …". See Warranty Provision.

55. Plaintiff and Defendants agreed that the Warranty Provision is a material feature of the 2019 Warranty Contract.

56. The intent of the parties to the 2019 Settlement Agreement, and the expectation of Plaintiff, was that the Work would promptly commence after the 2019 Settlement Agreement was fully executed in or about November 2019 and be completed within two (2) months after commencement such that Plaintiff would receive the maximum time period of the 5-year Warranty Provision and no less than a 4 and ½ year warranty period.

57. Plaintiff was mistaken regarding the time period during which the Warranty Provision would be in effect after the Work was completed as the Work has not yet been

completed for all the affected homes in the Community as of the date of this filing due to the actions and/or omissions of Defendants.

58.     The mistake is of such great consequence that enforcement of the Warranty Provision as written would be unconscionable as Plaintiff would not receive the benefit of the full intended 4 and ½ year duration of the Warranty Provision.

59.     The mistake occurred notwithstanding the exercise of reasonable care by Plaintiff.

60.     The mistake was accompanied by inequitable conduct by Defendants, including critical and inexplicable gaps in communication, unreasonable delays, delivery of defective materials and a complete suspension of Work.

**WHEREFORE,** the Association demands reformation of the Warranty Provision to correct the commencement date of Defendants' warranty to instead begin upon completion of the Work, as well as judgment against Defendants, jointly, severally, and in the alternative, for compensatory, consequential and incidental damages, punitive damages, interest, attorney's fees, costs of suit, and such other relief as this Court may deem just and appropriate.

> HYLAND LEVIN SHAPIRO LLP
> Attorneys for Plaintiff
>
> _____
> DAVID R. DAHAN, ESQUIRE

Date:  October 22, 2021

## CERTIFICATION OF NO OTHER ACTIONS

Pursuant to Local Civil Rule 11.2, it is hereby stated that the matter in controversy is not the subject of any other action pending in any other court or of a pending arbitration or

administrative proceeding. It is also hereby stated that no other action or arbitration proceeding is currently contemplated.

Other than the parties already named in connection with this action, Plaintiff knows of no other parties that should be joined or may be subject to joinder.

Plaintiff recognizes the continuing obligation of each party to file and serve on all parties and the Court a supplemental and/or amended certification if there is a change in the facts stated in this Certification.

HYLAND LEVIN SHAPIRO LLP<br>
Attorneys for Plaintiff<br><br>
_____<br>
DAVID R. DAHAN, ESQUIRE

Date: October 22, 2021

## JURY DEMAND

Plaintiff hereby demands a trial by jury as to all issues so triable.

HYLAND LEVIN SHAPIRO LLP<br>
Attorneys for Plaintiff<br><br>
_____<br>
DAVID R. DAHAN, ESQUIRE

Date: October 22, 2021